George BRENIMAN, Plaintiff-Appellant,

v.

AGRICULTURAL CONSULTANTS, INC., Dean Lansing, Natalie Lansing and John Appel, Defendants-Appellees.

No. 79CA0746.

Colorado Court of Appeals, Div. I.

Jan. 14, 1982.

Rehearing Denied Feb. 11, 1982.

Certiorari Denied June 28, 1982.

**166**

Stitt, Wittenbrink & Roan, P. C., R. J. Wittenbrink, Westminster, for plaintiff-appellant.

J. Bruce Teichman, Denver, for defendants-appellees.

STERNBERG, Judge.

George Breniman sued Agricultural Consultants, Inc., to invalidate acts of the board of directors regarding an alleged illegal issuance of stock. The trial court held that Breniman's preemptive rights had been violated, and Breniman was given a choice of two remedies. Breniman objected to both remedies and this appeal followed. We affirm.

Breniman complains that the remedies allowed by the trial court are inadequate. He seeks a remedy whereby, in recognition of his position as a dissenting shareholder, the court appraises his stock and forces the other stockholders to buy him out. Additionally he wants certain salary increases, bonuses, and a stock bonus plan to be declared void, and any monies paid by the corporation for those purposes to be paid back into the corporation. Finally, Breniman asks for backpay, attorney fees, and punitive damages.

Breniman was among the first incorporators of Agricultural Consultants, Inc., and by January of 1966, he held ⅓ of the issued shares and was a director of the corporation. However, at the same time, the corporation had become insolvent, and defendant Dean Lansing was elected to the board of directors and given the job of managing the business. By March of 1974, the board of directors consisted of defendants John Appel and Lansing, and plaintiff Breniman. Breniman and Lansing each owned ½ of the outstanding shares of stock.

On March 1, 1974, a special meeting of the board of directors was held at which Lansing and Appel voted to issue 3,480 shares of unissued stock to "such persons as the president shall designate," with the proviso that the stock was not to be offered to Lansing, Breniman, or their "surrogates."

Breniman voted against the motion. The shares were ultimately sold to Appel. Breniman then brought this suit.

Breniman complained that the issuance of the stock to Appel diluted his stock, extinguished his veto power, and violated his preemptive rights. He also claimed that Lansing and Appel had committed several illegal acts: establishing a key employee stock bonus plan; paying substantial salary increases to Appel, Lansing, and Lansing's wife; purchasing securities, precious metals, and motorcycles; and using corporate credit cards for personal charges. During all of this time Breniman served as a member of the board of directors and resigned on advice of counsel to prosecute this suit.

The district court agreed that Breniman's preemptive rights had been violated, and granted him a choice of remedies: He could purchase 3,480 shares at the same price paid by Appel, or he could force the corporation to cancel Appel's shares. The court refused to void the stock bonus plan and declared that the salary increases and purchase of securities and metals were not unreasonable. Appel and Lansing were held liable to the corporation for the motorcycles and the cost of insuring them. The court was not convinced that the corporation had not been reimbursed for personal charges and refused to speculate as to any amounts remaining unpaid.

The "appraisal" remedy which Breniman seeks:

"is essentially a statutory creation to enable shareholders who object to certain extraordinary corporate matters to dissent and to require the corporation to buy their shares at the value immediately prior to the approval of the matter and thus to withdraw from the corporation."

H. Henn, Handbook of the Law of Corporations § 349 (2d ed. 1970). Under § 7–5–113, C.R.S.1973, applicable during the period pertinent here, dissenting shareholders were afforded such a remedy, but only when assets were sold not in the usual

course of business.[1] The issuance of stock to Appel contrary to Breniman's preemptive rights does not fall within the purview of this section.

■ Breniman's contentions concerning the salary increases and bonuses are also untenable. The board of directors had been unanimously elected prior to the stock issuance. Therefore, even had there been no stock issuance, the programs instituted by Lansing and Appel could have been enacted over Breniman's dissent. Further, the board of directors has discretion to fix director's salaries. *Herald Co. v. Seawell*, 472 F.2d 1081 (10th Cir. 1972); *see O'Malley v. Casey*, 42 Colo.App. 85, 589 P.2d 1388 (1979). Since the unlawful issuance of stock did not result in an alteration of the management, Breniman cannot be heard to contest the acts of management subsequent to the issuance of stock to Appel.

■ Next, Breniman argues that the key employees stock bonus plan should be voided. However, on April 13, 1976, Breniman agreed to the implementation of that stock bonus plan in a stipulation. That stipulation did provide that Breniman wished to preserve his "rights"; but he apparently did not feel, at that time, that implementing the plan would harm the corporation. Now that he has changed his mind, we see no reason why the corporation or the key employees should be penalized.

■ Finally, Breniman argues that § 7–3–101(1)(*o*), C.R.S.1973 (1980 Cum.Supp.), entitles him to an award of attorney fees. However, that section allows a corporation to indemnify its officers where the officers are called upon to expend money in defending their corporate acts. Breniman is attacking corporate acts. *See Beebe v. Pierce*, 185 Colo. 34, 521 P.2d 1263 (1974).

Breniman's additional claims are without merit.

The judgment is affirmed.

COYTE and KIRSHBAUM, JJ., concur.

1. In addition to this remedy which is now set out in § 7–4–123, C.R.S.1973 (1980 Cum. Supp.), the remedy of an involuntary dissolution is now available under § 7–8–113, C.R.S. 1973 (1980 Cum.Supp.) if directors act illegally or if corporate assets are misapplied. However, the claim here accrued before this latter statute's effective date. *See Colo.Sess.Laws* 1977, ch. 68, at 396.